UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR20-14 RSM |
| Plaintiff, | ORDER |
| v. | |
| BRANDON BRANDRETH-GIBBS, | |
| Defendant. | |

This matter is before the Court on defendant's motion for an order directing the Bureau of Prisons (BOP) to immediately, or by a date certain, transport defendant to a federal medical center for treatment to restore his competency. Dkt. #70. Defendant contends that the delay in his transfer, after the Court has determined him incompetent, violates his due process rights to treatment. Dkts. #70 and #72. In response, the government argues that this is not the proper time or manner for defendant to challenge his detention, that his detention does not violate his due process rights, and that no basis exists upon which the Court can grant defendant relief. The Court ultimately agrees with the government and denies the motion.

On February 13, 2020, defendant Brandon Brandreth-Gibbs was ordered held in this matter, Dkt. #14, and has remained in custody since. From the beginning, defendant's competency was disputed between the parties and these disputes, along with the COVID-19

ORDER – 1

1    pandemic, delayed transfers between facilities, competency evaluations, communications with

2    counsel, and a competency hearing. Finally, on January 13, 2021, the Court held a competency

3    hearing and determined that "defendant is presently suffering from a mental disease or defect

4    rendering him mentally incompetent to the extent that he is unable to assist properly in his

5    defense." Dkt. #68 at 1 (citing 18 U.S.C. § 4241(d)). The Court committed "defendant to the

6    custody of the Attorney General for hospitalization and treatment in a suitable facility and for

7    attempted restoration." *Id.* (citing 18 U.S.C. § 4241(d), 4347(a)(2), (i)). In furtherance of the

8    Court's order, the Court directed the U.S. Marshal and BOP to "take all necessary steps to

9    transport the defendant to the suitable facility as soon as possible." *Id.* at 2. Despite the Court's

10   order, defendant remains at Federal Detention Center SeaTac (FDC SeaTac) where he is housed

11   in the Special Housing Unit (SHU). Dkt. #70 at 2. The government represents that defendant

12   was designated for transfer to a Federal Medical Center Butner (FMC Butner) on January 29,

13   2021. Dkt. #71 at 1, 4. But the BOP is dealing with a nation-wide backlog of inmates in need

14   of treatment to restore competency and limited facilities providing such services and accordingly

15   does not anticipate that defendant will be transferred until June 2021. *Id.*

16         There are no easy answers in this case. Defendant's primary contention is that his

17   continued detention in the FDC SeaTac SHU violates his due process rights to restorative

18   treatment and is overly punitive. Dkt. #72 at 2–3 (citing *Oregon Advocacy Ctr. v. Mink*, 322

19   F.3d 1101, 1121 (9th Cir. 2003) (noting liberty interests in freedom from incarceration and in

20   restorative treatment")). Unquestionably, defendant's present housing is not well suited for his

21   medical conditions:

22       We are also mindful of the undisputed harms that incapacitated criminal
     defendants suffer when they spend weeks or months in jail waiting for transfer to
23   [receive treatment]. These harms include the following: Although jails can
     sometimes provide treatment to stabilize a patient, they cannot restore a patient to
24   competency. Thus, incarceration in a county jail delays an incapacitated criminal

ORDER – 2

>defendant's possible return to competency. The disciplinary system that jails use to control inmates is ineffective for, and possibly harmful to, incapacitated criminal defendants. Because of their unpredictable or disruptive behavior, they are often locked in their cells for 22 to 23 hours a day, which further exacerbates their mental illness. Incapacitated criminal defendants have a high risk of suicide, and the longer they are deprived of treatment, the greater the likelihood they will decompensate and suffer unduly.

*Mink*, 322 F.3d at 1120; *see also Trueblood v. Washington State Dept. of Social and Health Servs.*, 101 F. Supp. 3d 1010, 1021 (W.D. Wash. 2015), *reversed and remanded on other grounds by*, 822 F.3d 1037 (9th Cir. 2016). Even the government concedes that "[t]here might be a point at which unreasonable delays in the hospitalization of [an incompetent] detainee . . . infringes on the detainee's due-process rights." Dkt. #71 at 6 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). But defendant does not clearly establish such a violation here.[1]

Pursuant to statute, and upon the Court's determination that defendant is incompetent, "the court shall commit the defendant to the custody of the Attorney General" for restoration of competency. 18 U.S.C. § 4241(d); *see* Dkt. #68. The statute, however, does not look to the Court to micromanage the Attorney General's determination of when to transfer the defendant to a suitable facility—a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." 18 U.S.C. § 4247(a)(2). That discretionary determination lays with the Attorney General.

The facts presented here—a delay of one month from designation for transfer, a national backlog of detainees needing competency restoration, limited facilities, and an ongoing

---

[1] Most concerning is the national four-month backlog interfering with timely treatment for BOP detainees in need of competency restoration treatment. Unfortunately, the government represents that these delays result from a sizable need for competency restoration treatment and too few treatment facilities. Dkt. #71 at 1, 4. However, the record before the Court is not adequate to consider any systematic deficiencies that may exist or the collective interests of those who remain in detention prior to receiving competency restoration services. *C.f. Mink*, 322 F.3d 1101; *Trueblood*, 101 F. Supp. 3d 1010. On the record there is no indication whether the delays are habitual or temporary or whether they may be related to the ongoing COVID-19 pandemic.

ORDER – 3

...

pandemic—do not yet warrant judicial intervention.[2] The record does not establish that defendant's transfer cannot occur before the June 2021 estimate. Defendant receives mental health services at FDC SeaTac and, while the Court acknowledges that the treatment is insufficient to restore defendant's competency, those services can hopefully stabilize defendant's condition until he can obtain more appropriate treatment. Of course, the Court expects that the government will continue to monitor defendant's condition and take necessary actions to properly care for its ward. *Mink*, 322 F.3d at 1120–22 (due process at least requires "the nature and duration of commitment to bear some reasonable relation to the purpose for which the individual is committed"; restoration of competency to stand trial).

Accordingly, and having reviewed defendant's motion, the relevant briefing and supporting documents, and the remainder of the record, the Court hereby finds and ORDERS that the Defense Notice RE: Status of Designation and Transport Following Competency Hearing and Motion for Date Certain or Detention Hearing (Dkt. #70) is DENIED.

DATED this 26th day of February, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The Court notes that the government questions whether a writ of habeas corpus may be a more appropriate manner in which to seek relief from the Court, noting that the statutory scheme explicitly leaves writs of habeas corpus untouched. Dkt. #71 at 6 n.3 (citing 18 U.S.C. § 4247(g)).

ORDER – 4